[No. 4074.    Decided July 17, 1902.]

SARAH S. GILMORE, *Respondent,* v. SEATTLE & RENTON RAILWAY COMPANY, *Appellant.*

INSTRUCTIONS — MISLEADING TERMS — WEIGHT OF TESTIMONY.

An instruction which charges the jury that they should "take into consideration, in passing upon the weight of the testimony, not so much the number of witnesses that testified to any one given fact, but the quality of the testimony," is erroneous on the ground of invading the province of the jury, if by the use of the term "quality" the court meant the better evidence, and also on the ground that the use of the term "quality" in such connection is confusing and misleading.

SAME — APPLICABILITY TO ISSUES.

In an action to recover damages for injuries received by a passenger from the sudden starting of the car while alighting, an instruction that if the jury believe that "plaintiff had a reasonable time, as I will define that to you, in which to alight from the car, and that she did as a matter of fact alight from the car, but that she retained her hold upon the guard rail or stanchion of the car for a time longer than would be reasonably sufficient for a person of ordinary prudence and activity," then she cannot recover, was not erroneous when there was a further instruction to the effect that a passenger could not be said to be off the car so long as he was supporting himself thereby and being still in the act of alighting.

Appeal from Superior Court, King County.—Hon. G. MEADE EMORY, Judge.    Reversed.

*Peters & Powell,* for appellant.

*Brady & Gay,* for respondent.

The opinion of the court was delivered by

FULLERTON, J.—This is an appeal from a judgment for personal injuries recovered by the respondent against the appellant.    The appellant operates an electric street car line in the city of Seattle, and the injury complained

of was received by the respondent, as she alleges, because
of the negligent act of the appellant's employees in starting
a car from which she was alighting. It is conceded that
there was sufficient evidence to justify the court in sub-
mitting the questions of fact to the jury, but it is con-
tended that the court did not do so fairly in its instruc-
tions, committing error therein prejudicial to the appel-
lant's case.

The instruction first complained of is as follows:

"You, gentlemen of the jury, are the sole judges of
the facts and of the credibility of the witnesses, and of
the weight to be given to their respective testimony. You
will take into consideration, in passing upon the weight
of the testimony, not so much the number of witnesses
that testified to any one given fact, but the quality of the
testimony. And in weighing the quality of the testimony
you will take into consideration the interest of the wit-
nesses, their appearance on the witness stand, the interest
or lack of interest that they, or any of them, may have
in the subject matter of this action and in your verdict;
and you may take into consideration    all    circumstances
which appeal to you, as men knowing human nature, which
would affect the credibility of the testimony of those wit-
nesses. You are also entitled to take into consideration
the age of any witness, if, in your opinion, that age bears
upon the reliability of that witness' testimony."

Doubtless the trial court may properly instruct the jury
that, in determining the preponderance of the evidence
upon any issue of fact made by the pleadings, they need
not be controlled by the mere circumstance that a greater
number of witnesses have testified upon one side than upon
the other, but that they may    take    into    consideration,
along with that circumstance, all of the facts' and circum-
stances of the case shown by the evidence, and make up
their verdict from the whole thereof as the truth shall ap-
pear to them, whether that be with the greater or the less

number of the witnesses testifying. But it seems to us that the instruction before us does something more than this. It tells the jury that they will not regard the number of witnesses testifying to any given fact, so much as the quality of the testimony. If by the use of the term "quality" the court meant the better evidence, then the court has invaded the province of the jury, for it is for the jury to say whether they will regard the testimony of the greater number of witnesses testifying as more or less controlling than the better testimony of the fewer number. The court cannot, without invading the province of the jury, instruct them which class of evidence is entitled to the greater weight, or instruct them in any manner which will not leave them free to make up their verdict from their own views of the weight of the evidence. Nor is such an instruction rendered harmless by an instruction to the effect that the jury are the sole judges of the credibility of the witnesses and of the weight of the evidence, as it gives them a wrong rule of law for determining that weight and credibility.

The instruction is also objectionable for another reason. It is the right of parties to have the jury instructed on the law applicable to the case, clearly and pointedly, so as to leave no reasonable ground for misapprehension or mistake as to the meaning of the language used. The word "quality" is here used in an unusual sense, and the instruction is for that reason liable to confuse and mislead the jury. In *Morton v. O'Connor,* 85 Ill. App. 273, it was held error to instruct the jury that, in judging the preponderance of the evidence, they should be governed by the quality of the evidence, and not simply by the quantity. Speaking on the question, the court said:

"The first proposition announced by the instruction is that the jury should be governed by the quality of evi-

dence, and not simply by the quantity. We do not know what is means by 'quality,' in the connection here employed, and it is not likely that the jury did. At the best, the instruction was in such respect confusing and misleading, and that, too, in a case where clearness and accuracy were demanded. If it be meant that the jury should be controlled by the testimony of the most intelligent, best informed, most credible, and least interested witnesses, it was error for the court to invade the province of the jury in thus pointing out to them a class of witnesses whose testimony should be given the greater weight. *Chicago City Railway Co. v. Keenan*, 85 Ill. App., *post.*

"We need not speculate as to what other meaning 'quality' has, as used; for, whatever it may mean, the instruction was, in effect, to single out by the court a class of witnesses whose testimony the jury should attach a controlling weight to. The jury alone shall determine where the weight of evidence is to be found."

See, also, the instructive case of *Pennsylvania Co. v. Hunsley*, 23 Ind. App. 37 (54 N. E. 1071).

The allegation of negligence in the complaint was as follows:

"That while plaintiff was such passenger on Washington street, near the intersection of Fourth avenue, in the city of Seattle, when in the act of getting out of and off from the said car, and being still thereon, the said car was, through the negligence of the servants of the said defendant, suddenly started and put in motion, without allowing said plaintiff sufficient time to safely get off."

This states substantially the way the injury occurred, as testified by the respondent. On this point the court gave to the jury, among others on the same subject, the following instructions:

"I instruct you in this case, gentlemen, that the plaintiff, if she recovers, must recover upon proof of negligence under the rules I have laid down, which would be included in the allegations of negligence described in the complaint. Any act which you should find to be negligence, even

though it were included in the allegations of the complaint, and did not fully cover all the allegations of the complaint, would be sufficient to find as negligence in this case, provided that those acts conformed in other respects to all my instructions."

"I instruct you also, gentlemen, that it is the duty of a railway company such as this to use the degree of care which I have defined as being the duty of railway companies, to see to it that passengers intending to alight have a reasonable time in which to alight and detach themselves in safety from the car in which they are traveling."

"And, that it is also the duty of such railroad companies, in the event that a passenger is alighting, or is in the act of alighting, to use that same high degree of care that I have defined, to prevent injury to that passenger, in not starting the car while that passenger is in a position of danger, and when the employees of the company either know, or ought to know by the exercise of that same degree of care that the law imposes upon them, that the passenger is in that condition of danger or apparent danger. Any breach of the performance of this duty which I have thus more specifically defined would be such negligence, under the issues in this case, that the jury could take cognizance of."

"If you believe from the fair preponderance of all the evidence that the plaintiff had a reasonable time, as I will define that to you, in which to alight from the car, and that she did as a matter of fact alight from the car, but that she retained her hold upon the guard rail or stanchion of the car for a time longer than would be reasonably sufficient for a person of ordinary prudence and activity, considering all her conditions and surroundings, and if you find that by reason of her so retaining hold of that guard rail she was injured, it will then be your duty, gentlemen, to find your verdict in favor of the defendant in this case."

It is objected to these that the court did not confine the jury to the allegation of negligence set out in the complaint, but permitted them to find for respondent even though

they might believe that she was injured in a manner entirely different from that alleged in her complaint, and claimed by her in her own testimony. If any of these several paragraphs are susceptible to the objection made, it is the last paragraph quoted. But we do not think there was error here. The instruction, standing alone, would seem to imply that the appellant was permitted to hold on to the stanchion or hand rail of the car for a reasonable time after alighting; but the court makes his meaning clear by a further instruction to the effect that a passenger could not be said to be off the car so long as he was supporting himself thereby, and being still in the act of alighting.

For the error committed in the first instruction mentioned, the judgment is reversed and the cause remanded for a new trial.

REAVIS, C. J., and HADLEY, WHITE, ANDERS and MOUNT, JJ., concur.

DUNBAR, J.—I dissent. I think the court simply instructed the jury, in effect, that it need not be controlled by the number of witnesses, and this is the well established law.